MARK BRUCE SKANE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Skane v. Commissioner
Docket No. 8143-83.
United States Tax Court
T.C. Memo 1984-364; 1984 Tax Ct. Memo LEXIS 315; 48 T.C.M. (CCH) 528; T.C.M. (RIA) 84364; July 16, 1984. Michael A. LaBazzo, for the petitioner. James J. Posedel, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $1,760 in petitioner's income tax and an addition to tax under section 6651(a)(2) [1] for the taxable year 1979. At issue is the deductibility of various types of moving expenses under section 217. [2]
*316 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in San Diego, Calif., at the time the petition herein was filed. He filed his return on a cash basis for the year in question with the Internal Revenue Service, Fresno, Calif.
Prior to August 1977, petitioner and his parents and brother lived together in a house in Oxon Hill, Md. (the Oxon Hill house), which had been acquired some 15 years previously and title to which was at all times in the parents' names. Petitioner graduated from college in 1969 with a bachelor's degree and obtained a master's degree in 1972. During the period from 1969 to August 1977, petitioner worked as an engineer and contributed a portion of his earnings to a common fund from which payments were made of principal and interest on the mortgage and for repairs on the Oxon Hill house and on other rental properties owned either by petitioner or jointly by petitioner and his parents. On August 29, 1977, petitioner commenced his employment with Rockwell International (hereinafter Rockwell) in Newport Beach, Calif. At that time, petitioner moved to Newport Beach and took with him from Oxon Hill one automobile *317 trunk of personal items. The balance of his personal belongings remained in the Oxon Hill house until they were transported to California in 1979. While in Newport Beach, petitioner lived either alone or with another person in two different apartments (one an efficiency and one with two bedrooms). It was contemplated that, after petitioner's mother retired and the rental properties were sold, petitioner's family (his father, mother, and brother) would resume living together in California. The Newport Beach apartments were inadequate to house the family, and consequently petitioner considered those apartments to be temporary living quarters. Petitioner's father retired from his employment some time in the early 1970's. Petitioner's mother retired from service with the Federal government in 1978. Upon petitioner's employment in August 1977 at Rockwell, petitioner's parents put the Oxon Hill house on the market by listing the property with Routh Robbins Real Estate Corporation on August 14, 1977. The property was on the market until it was sold and settlement closed in December 1978. During this period, other investment real estate was disposed of. Petitioner flew back to *318 Maryland in December 1978 to move his belongings, his parents, his parents' belongings, and some of his brother's belongings to Southern California. Petitioner's parents' initial residence in San Diego was an apartment in which they lived for approximately two months until they moved into a home which they purchased, located at 3033 Conner Way, San Diego. During 1979, petitioner worked for his brother, A. Keith Skane, on weekends, vacations, and holidays. Petitioner's brother's business was located in San Diego, and petitioner would spend his weekends, vacations, and holidays during 1979 staying at 3033 Conner Way in San Diego with his parents. Newport Beach is approximately 90 miles north of San Diego. On January 19, 1980, petitioner resigned his position with Rockwell and commenced full-time employment with his brother. On that date, he moved into 3033 Conner Way with his parents. Petitioner subsequently moved into another San Diego address but returned to 3033 Connor Way several months prior to the trial herein. In December 1978, 11,180 pounds of household goods were shipped, via United Van Lines, from Oxon Hill, Md., at a cost of $4,736.38, to San Diego. These goods *319 were those of petitioner, his parents, and his brother. Thirty-five percent of these goods belonged to petitioner, 50 percent to petitioner's parents, and 15 percent to petitioner's brother. The goods were stored for two months at a cost of $923.55. On his 1979 Federal income tax return, petitioner claimed a moving expense deduction of $8,447. That deduction consisted of the following: Transportation expenses in
$5,660
moving household goods and
personal effects
Travel, meals, and lodging
1,287
expenses in moving from
former to new residence
Pre-move travel, meals,
$859 [3]
and lodging in search
for a new residence after
getting job
Temporary living expenses
1,087 [4]
in new location or area
during any 30 consecutive
days after getting job
Subtotal (limited to
1,500
$1,500)
Total claimed deduction
$8,447
*320 On his 1977 Federal income tax return, petitioner deducted $958 for moving expenses between Oxon Hill and Newport Beach. OPINION The bulk of the moving expenses deducted by petitioner herein involve expenses of petitioner's parents and brother. [5] Pursuant to section 217(b)(3)(C), the expenses of each of those individuals are deductible by petitioner only to the extent that such individuals were members of petitioner's "household" at Oxon Hill (the "former residence"). Petitioner asserts that the Oxon Hill house was a community household, that there were two households -- one the "household" of his parents and the other his "household" -- and that he was a member of his parents' "household." In so asserting, petitioner relies on the fact that he contributed to the expenses of his parents' household, particularly in respect of payments of principal and interest on the mortgage which gave him an equitable interest in the house. *321 At the outset, we note that the record herein is inadequate to determine what portion of the "household" expenses were actually paid with petitioner's funds. We find it unnecessary, however, to decide whether such payments were sufficient to give petitioner an equitable interest in the Oxon Hill house, [6] because, even if petitioner acquired such an interest, we do not think it would be sufficient to require the conclusion that the "household" was petitioner's for the purpose of section 217(b)(3)(C). The determination of whose "household" a particular place of abode is involves more than deciding who are the owners of the property. At most, the record herein permits the conclusion that there were two households at the Oxon Hill house. But it does not follow that, because there were two households, the members of each household belonged to the other household. We think *322 that there were two separate households at the Oxon Hill house -- one that of petitioner and one that of petitioner's parents; petitioner alone constituted one household, and the parents and brother constituted another household. Cf. Estate of Fleming v. Commissioner,T.C. Memo. 1974-137, which applied the concept of separate households in the context of determining whether the taxpayer was entitled to utilize the tax rates applicable to heads of households. We hold that the moving expenses attributable to the moving of petitioner's parents and brother and their household effects to California do not constitute moving expenses of "a member of the taxpayer's [petitioner's] household" within the meaning of section 217(b)(3)(C). We now turn to the issue of the deductibility of the remaining expenses incurred in 1979. The first category is 35 percent of the $5,660 paid for moving and storing of household goods and personal effects. Resolution of this issue turns upon the nature of petitioner's residence in Newport Beach. Petitioner asserts that this residence was "temporary" pending a determination of when and where the other members of petitioner's family would *323 move at a later date. We are not persuaded that petitioner should be allowed to deduct the 1979 expenses of moving his household goods and personal expenses. The regulations require that the move not only must be "in connection with * * * [the] commencement of work" but it also "must bear a reasonable proximity both in time and place to such commencement at the new principal place of work." Section 1.217-2(a)(3)(i), Income Tax Regs. We think that petitioner has not satisfied either the proximate "time" or "place" requirement of the regulation. Clearly the reason for the delay in the move was related to matters such as the retirement of petitioner's mother and the disposition of rental properties in the vicinity of the Oxon Hill house, to say nothing of the fact that it can be inferred that the establishment of petitioner's brother's business was also a consideration in the delay. In our opinion, none of these reasons justify the delay by petitioner in moving his household goods and personal effects. They do not come close to having the impact of the schooling of a taxpayer's children. See section 1.217-2(a)(3)(ii), Example (1), Income Tax Regs.; Rev. Rul. 78-200, 1978-1 C.B 77. *324 Moreover, children of school age clearly are members of a taxpayer's household, so the expenses of their move would be deductible, whereas in the instant case we have held that the petitioner's parents and brother are not members of his household. We also observe that the expenses in question were for a move to Sab Diego (90 miles from Newport Beach) and appear to us to be much more related to petitioner's decision to leave his employment by Rockwell and become involved in his brother's business in San Diego. In view of the foregoing, we hold that petitioner's expenses of moving his household goods and personal effects in 1979 did not bear "a reasonably proximity both in time and place" to the commencement of his work at Rockwell and are therefore not deductible. We next consider the item of $1,287 expended in 1979 for travel, meals, and lodging expenses in moving from a former residence to a new residence. To the extent that these expenses are attributable to the costs incurred in respect of petitioner's parents and brother, they are not deductible, because those persons were not members of petitioner's household. To the extent that they represent expenses of petitioner, they *325 represent costs of a second trip between Oxon Hill and California. Since petitioner already deducted the cost of one such trip in 1977, he is not entitled to deduct the 1979 expenses. Section 1.217-2(b)(4), Income Tax Regs.
Finally, we consider the item of $1,087 deducted by petitioner for temporary living expenses. Section 217(b)(1)(D) permits a deduction for the expenses of "meals and lodging while occupying temporary quarters in the general location of the new principal place of work during any period of 30 consecutive days after obtaining employment." (emphasis added.) Respondent limits his contention as to nondeductibility of these expenses to the assertion that petitioner has not carried his burden of proof as to when, how, and where these expenses were incurred. Petitioner counters with the assertion that respondent stipulated to these expenses and therefore his burden of proof his been satisfied. While a literal reading of the stipulation would permit a reading that respondent merely stipulated that petitioner "claimed" these expenses, the fact is that at no time did respondent indicate that petitioner was expected to substantiate these expenses in every respect. *326 [7] Nevertheless, petitioner is not entitled to a deduction for such expenses. He testified that these expenses represented his share of the expenses of the apartment in San Diego in which his parents lived for two months prior to moving into the residence at Conner Way and where petitioner spent his weekends. Section 217(b)(1)(D) specifies that the "temporary quarters" are to be "in the general location of the new principal place of work." While the Newport Beach apartment would have satisfied this requirement, we think that an apartment 90 miles away in San Diego does not. Moreover, the amounts claimed for phone and travel do not, in any event, fall within the "meals and lodging" requirement of that section. An appropriate order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The addition to tax under section 6651(a)(2) is not at issue, because the Court does not have jurisdiction thereof. Estate of Young v. Commissioner,81 T.C. 879↩ (1983).
3. Petitioner has conceded that this item is not deductible. Petitioner has also conceded that he omitted reporting $86 of interest income on his 1979 return. ↩
4. Petitioner maintains that the claimed deduction for "temporary living expenses in new location or area during any 30 consecutive days after getting job" consists, inter alia, of: ↩
Rent
$215
Phone
106
Meals (30 days
at $5 a meal)
450
$771
5. Respondent does not deal separately with the two-months' storage charges included in moving expenses. See section 1.217-2(b)(3), Income Tax Regs.↩, which limits in-transit storage charges to those "incurred within any consecutive 30-day period after the day such goods and effects are moved from the taxpayer's former residence."
6. It is noteworthy that petitioner's parents made all of the mortgage payments for many years prior to the time that any of petitioner's funds may have been so used. Moreover, we note that more than 50 percent of the household effects which were moved in 1979 belonged to petitioner's parents and brother.↩
7. In his trial memorandum, respondent merely stated that "respondent does not feel that the expenses incurred by petitioner are in harmony with the purpose for which I.R.C. § 217(b)(1)(D)↩ was enacted and consequently should be disallowed."